## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PRESTON LAWLEY,

      Plaintiff,

                                        Case No. 11-12822

v.                                       Hon. Lawrence P. Zatkoff

ALLAN JERRY SIEMONS,

      Defendant.

_____/

### OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 30, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Fed. R. Civ.

P. 12(b)(6) and 12(b)(2), and alternatively, to transfer venue [dkt 5].  Plaintiff responded to the

Motion.  Defendant, however, did not file a reply brief, and the time to do so has elapsed.  E.D.

Mich. L.R. 7.1(e)(1).  The Court, therefore, finds that the facts and legal arguments are adequately

presented in the parties' papers such that the decision process would not be significantly aided by

oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the

Motion be resolved on the briefs submitted.  For the reasons set forth below, Defendant's Motion

is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

This case arises from Defendant's alleged breach of an oral contract between Plaintiff and

Defendant.  Plaintiff alleges that the oral contract involves Defendant's promise to pay a portion of the proceeds Defendant would receive for redemption of Defendant's shares in Event Solutions International ("ESI") in exchange for Plaintiff introducing Defendant to business contacts in 1998 and approving Defendant's initial interest in ESI.

In 1998, Plaintiff alleges that he introduced Defendant to Plaintiff's business contacts in the auto industry in Detroit, Michigan.  Plaintiff also provided Defendant an interest in Plaintiff's start-up company, ESI.  ESI was formed by Plaintiff, Defendant, and non-party Elliot Broidy.  ESI existed under Nevada law as a Nevada corporation with a principal place of business in Rochester, Michigan.[1]  Broidy provided the initial working capital; Plaintiff, Defendant, and Broidy each received a 30% equity interest in ESI.[2]  Defendant purportedly provided no consideration to Plaintiff for his interest in ESI or for the alleged benefit he received from being introduced to Plaintiff's business contacts.  Plaintiff acted as President and Chief Executive Officer of ESI from January 1998 to July 2003.

In July of 2003, ESI's board terminated Plaintiff as President and redeemed Plaintiff's shares in ESI.  ESI paid Plaintiff $750,000 for his shares.  Defendant and Plaintiff both participated in the meeting, which occurred in Detroit.  After the meeting, Defendant allegedly told Plaintiff that he thought the board treated Plaintiff unfairly.  According to Plaintiff, Defendant then promised Plaintiff that when the board redeemed Defendant's shares in ESI, Defendant would pay Plaintiff 50% of the amount Defendant would receive from the redemption of his shares.  Defendant allegedly

---

[1]According to Plaintiff, ESI provides logistics for new vehicle introductions and activities. To that extent, ESI schedules and delivers such vehicles to such individuals as auto writers, industry analysts, and bloggers.

[2] The remaining 10% went to ESI employees.

2

made the promise in exchange for Plaintiff's efforts in 1998.  Plaintiff alleges that Defendant's wife witnessed the conversation.[3]  In August or September of 2003, Plaintiff purportedly visited Defendant in California and Defendant reiterated the alleged oral contract to Plaintiff.  According to Plaintiff, in the fall of 2003, Defendant also reiterated the alleged oral contract during meetings in Detroit and a subsequent telephone call that Defendant made to Plaintiff.

In February of 2005, Kevin Otis, then President and board member of ESI, traveled to Los Angeles, California and began negotiating with Defendant to redeem his shares.  Tom McAlear, former Chief Executive Officer and current board member of ESI, also was involved in the negotiations with Defendant.  According to the Affidavits of Otis and McAlear, Defendant requested a higher per share price because he had promised to pay Plaintiff 50% of his proceeds.  On July 5, 2005, ESI redeemed Defendant's shares for $2,625,000.  In 2006, Defendant moved from Malibu, California to Reno, Nevada.  Plaintiff resides in Alabama.

On June 30, 2011, Plaintiff filed his Complaint, seeking 50% of the proceeds Defendant received for redemption of his shares.  Plaintiff asserts three counts: (I) breach of the alleged express oral contract; (II) breach of an implied contract; and (III) unjust enrichment.  In lieu of answering, Defendant filed the instant Motion, seeking dismissal of Plaintiff's Complaint for lack of personal jurisdiction; lack of venue, or alternatively, for transfer of venue to Reno, Nevada; and for dismissal for failure to state a claim pursuant to 12(b)(6).

---

[3] Defendant disputes that his wife was present in Detroit, Michigan, during this meeting. According to Defendant's Affidavit, he and his wife, Lou Siemons, resided in Malibu, California. He further states that if any such conversation occurred, it occurred in California.

### III. PERSONAL JURISDICTION OVER DEFENDANT

#### A. LEGAL STANDARD

With respect to a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), it is well-settled that a plaintiff bears the burden of establishing that personal jurisdiction exists in this Court. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Commwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Once a defendant has filed a properly supported motion for dismissal, the plaintiff "may not stand on . . . [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over the defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930). In the typical case, once the defendant has filed a motion to dismiss for lack of personal jurisdiction, the plaintiff will file a factual response that, at a minimum, attempts to support the plaintiff's contention that the Court has personal jurisdiction over the defendant. At that stage of the proceedings, a court would have three options:

> [I]t may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.

*Theunissen*, 935 F.2d at 1458 (citing *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Significantly, it is within the district court's discretion to decide the method it will employ in deciding the motion. *Id.* at 1458 (citations omitted). Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff's burden is "relatively slight,"

4

*Am. Greetings Corp.*, 839 F.2d at 1169 (internal quotation marks omitted), and "the plaintiff must

make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."

*Theunissen*, 935 F.2d at 1458. The pleadings and affidavits submitted must be viewed in a light most

favorable to the plaintiff. *Id.* at 1459.

In a case based on the Court's diversity jurisdiction, as in this case, the exercise of

jurisdiction must be (1) authorized by Michigan law and (2) in accordance with the Due Process

Clause of the Fourteenth Amendment. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888

(6th Cir. 2002).

The Court first must look to the Michigan long-arm statute, Mich. Comp. Laws § 600.705,

to determine whether personal jurisdiction exists in the case at bar.[4]  Mich. Comp. Laws § 600.705

provides, in pertinent part:

> The existence of any of the following relationships between an
> individual or his agent and the state shall constitute a sufficient basis
> of jurisdiction to enable a court of record of this state to exercise
> limited personal jurisdiction over the individual and to enable the
> court to render personal judgments against the individual or his
> representative arising out of an act which creates any of the following
> relationships:
>
> (1)  The transaction of any business within the State.
>
> * * *
>
> (3) The ownership, use, or possession of real or tangible personal
> property situated within the state.
>
> * * *
>
> (6) Acting as a director, manager, trustee, or other officer of a

---

[4]  The Court need not consider Mich. Comp. Laws § 600.701, setting forth the relationships
that constitute general personal jurisdiction over individuals, as Plaintiff does not assert that this
Court has general jurisdiction over Defendant under Michigan law.

5

corporation . . . having its principal place of business within this state.

(emphasis added). In *Sifers v. Horen*, 188 N.W.2d 623 (Mich. 1971), the Michigan Supreme Court stated that the phrase "transaction of any business within the State" found in Mich. Comp. Laws § 600.705 "means just what it says." 188 N.W.2d at 623–24; *accord Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). "It includes 'each' and 'every' [transaction] . . . . It comprehends the 'slightest'" contact. *Id*. at 624 n.2. *See also Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905–06 (6th Cir. 1988). "However, constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in the due process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.*

**B. ANALYSIS**

**1. Personal Jurisdiction is Authorized by Michigan Law**

Defendant contends that Michigan law does not authorize personal jurisdiction over him because his sole contact with Michigan is the fact that he was a shareholder of ESI. In response, Plaintiff alleges that this Court has personal jurisdiction over Defendant. Plaintiff asserts that Defendant was a shareholder and board member of ESI, which has its principal offices in Rochester, Michigan. Defendant traveled to Michigan to attend ESI board meetings and to conduct ESI business. Plaintiff also alleges that Defendant made the oral contractual statements to Plaintiff in Detroit, Michigan, after the July 2003 board meeting.[5]

---

[5]Plaintiff also contends that Defendant was President of a separate corporation, Event Vehicles, Inc., which had authority to conduct business in Michigan. The Court does not find this as a basis to assert personal jurisdiction over Defendant under Michigan law because Plaintiff makes no showing that this case arises from Defendant's relationship with Event Vehicles, Inc.

Viewing the facts in favor of Plaintiff, the Court finds that personal jurisdiction is authorized under subsection (1) of Mich. Comp. Laws § 600.705. Defendant transacted business in Michigan when he made the alleged oral promise to Plaintiff at the July 2003 board meeting. *See Sifers,* 188 N.W.2d at 624 n.2. The fact that the oral promise was made in Michigan is supported by Plaintiff's Affidavit. Otis and McAlear's Affidavit also support Plaintiff's statements to the extent Defendant made an oral promise to Plaintiff to pay him 50% of Defendant's proceeds from the redemption of his shares. Therefore, the Court concludes Defendant's alleged oral promise which Plaintiff contends formed an oral contract satisfies Mich. Comp. Laws § 600.705(1).

**2. Exercise of Personal Jurisdiction Would Not Offend Due Process**

As the Sixth Circuit has recognized, however, the mere authorization of the laws of Michigan to exercise personal jurisdiction over a defendant is not enough. Rather,

> [i]n order to survive [Defendant]'s motion to dismiss, [Plaintiff is] required to present a prima facie case that the . . . court's exercise of personal jurisdiction would not offend due process. [Plaintiff] therefore must establish with reasonable particularity sufficient minimum contacts with Michigan so that the exercise of jurisdiction over [Defendant] would not offend "traditional notions of fair play and substantial justice."

*Neogen Corp.*, 282 F.3d at 889. The relevant criteria for the due process considerations (the "*Mohasco* requirements") are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990)) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401

F.2d 374, 381 (6th Cir. 1968)).

### a.    *Purposeful Availment*

Based on Defendant's relationship as a shareholder and board member of ESI, and the formation of the alleged oral contract in Michigan, the Court finds that Defendant purposefully availed himself of the privileges of Michigan and of causing consequences in Michigan.

Defendant owned a 30% equity interest in a corporation with its principal place of business in Michigan. Defendant also acted as a board member of ESI. In performing his duties, Defendant traveled to Michigan to attend ESI board meetings and to conduct ESI business. According to Plaintiff, the oral promise was allegedly made by Defendant in Michigan. Therefore, the Court concludes that Defendant has purposefully availed himself of the privileges of acting in the forum state and causing consequences in the forum state. Accordingly, the first *Mohasco* requirement is satisfied.

### b.    *Cause of Action Connected to Michigan Activities*

Plaintiff's cause of action is for breach of an oral contract based on the proceeds Defendant received for redemption of his shares in ESI. According to Plaintiff, the oral contract was formed in Michigan and relates to Defendant's relationship with ESI. As stated, ESI conducts business in Michigan and its primary office is located in Rochester, Michigan. Accordingly, the Court concludes that the second *Mohasco* requirement is satisfied.

### c.    *Substantial Connections*

The acts of Defendant and the consequences of its acts must have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable. *Air Prods. & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). The Court finds

8

that Defendant's contacts are sufficient to create a substantial connection with Michigan.  According to the pleadings, Defendant should have reasonably anticipated being haled into a Michigan court as a result of his relationship with ESI and the alleged formation of an oral contract with Plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (stating that "contacts with the forum proximately resulted from actions by the defendant [itself] that create a substantial connection with the forum state.") (internal citations omitted).  Accordingly, the Court finds that Defendant's acts are substantial enough connections with Michigan that the third *Mohasco* requirement is satisfied.

### d.    Conclusion

For the reasons set forth above, the Court finds that Plaintiff has made a prima facie showing that the Court's exercise of personal jurisdiction over Defendant would not offend due process. Accordingly, the Court denies Defendant's motion to dismiss on the basis of a lack of personal jurisdiction.

## IV. IMPROPER VENUE

Pursuant to 28 U.S.C. § 1391(a), a case based solely on the Court's diversity jurisdiction, as is the sole basis for jurisdiction in this case, may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Defendant claims that the Eastern District of Michigan is not the appropriate venue as

9

Defendant does not reside here and none of the events giving rise to Plaintiff's claims occurred in the Eastern District of Michigan. While the Court acknowledges Defendant resides in Nevada, under subsection (a)(2), venue is proper in the Eastern District of Michigan. A substantial part of the events giving rise to Plaintiff's claims did occur in Michigan. According to Plaintiff, Defendant made the alleged oral promise in July of 2003 in Michigan after an ESI board meeting. This oral promise is a substantial basis for Plaintiff's breach of an express or implied contract. Accordingly, Defendant's request to dismiss Plaintiff's case on the basis of improper venue is denied.

### V. TRANSFER OF VENUE

Pursuant to 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[A] district court 'has broad discretion to grant or deny [a] motion to transfer a case.'" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quoting *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)). The Court must give deference to the plaintiff's choice of forum, which is not disturbed "unless the balance is strongly in favor of the defendant." *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989) (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). The moving party bears the burden of showing, by a preponderance of the evidence that a change of venue is warranted. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003).

Defendant requests that this Court transfer the action to the Northern Division of the United States District Court for the District of Nevada. The parties do not dispute that venue is proper there, as Defendant resides there. *See* 28 U.S.C. § 1391(a) (stating that venue is proper in a particular district "where any defendant resides").

10

Therefore, to determine whether a motion to transfer venue pursuant to § 1404(a) should be granted, this Court must weigh the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) accessibility to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the costs of obtaining willing witnesses; (6) the practical problems of trying the case most expeditiously and inexpensively; and (7) the interests of justice. *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994); *see Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137(6th Cir. 1991) (considering the "private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns" when ruling on a motion to transfer under § 1404(a)). The presence of a forum-selection clause is significant when weighing the balance of the parties' interests. *Moses*, 929 F.2d at 1136–37.

In support of Defendant's request, Defendant asserts that none of the events giving rise to Plaintiff's claim occurred in Michigan; Defendant and his wife, who Plaintiff claims witnessed the formation of the oral contract, now reside in Reno, Nevada; and Plaintiff resides in Alabama.

The Court finds that Defendant's assertions do not establish by a preponderance of evidence that Defendant's interests substantially outweigh Plaintiff's choice of forum. As the Court has discussed, some of the events giving rise to Plaintiff's case occurred in Michigan. The alleged oral contract is related to Plaintiff's and Defendant's business relationship with ESI, which has its principal office in Michigan. As part of their business relationship with ESI, both Plaintiff and Defendant had to travel to Michigan. The alleged oral promise was also purportedly made in Michigan. Furthermore, according to the attached Affidavits of McAlear and Otis, whom both indicate that Defendant informed them about an alleged promise to pay Plaintiff 50% of Defendant's

11

proceeds, both reside in Michigan.  Accordingly, because a transfer of venue does not strongly favor Defendant, in providing deference to Plaintiff's choice of forum, the Court denies Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

## VI. DISMISS FOR FAILURE TO STATE A CLAIM

As a threshold matter, the parties dispute whether Plaintiff's claims are governed by Michigan law or California law.  Defendant contends that Michigan's borrowing statute, Mich. Comp. Laws § 600.5861, requires application of California's statute of limitations and Michigan's choice-of-law rules also require application of California contract law to this case.  Plaintiff disagrees that California law controls in either instance.  The Court will address each in turn.

### A. MICHIGAN'S BORROWING STATUTE

Pursuant to Michigan's borrowing statute, Mich. Comp. Laws § 600.5861 provides that "[a]n action based upon a cause of action accruing *without this state* shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued."  Mich. Comp. Laws § 600.5861 (emphasis added).  While "without this state" is not defined in the statute, in giving the phrase its plain meaning, the Michigan Court of Appeals held that "the borrowing statute applies only if an action accrued without any essential facts giving rise to the cause of action occurring in Michigan."  *Scherer v. Hellstrom*, 716 N.W.2d 307, 310 (Mich. Ct. App. 2006).

In this case, if Michigan's borrowing statute applies, then California's two-year statute of limitations on claims for breach of an implied or oral contract governs.  The Court finds that Michigan's borrowing statute does not apply.  According to the alleged oral contract, Defendant promised to pay Plaintiff 50% of Defendant's proceeds from the stock redemption.  This oral

12

contract was allegedly formed in July of 2003 in Michigan after Plaintiff was terminated as President and his shares in ESI were redeemed. The Court therefore finds that Defendant's oral promise to Plaintiff in Michigan is an essential fact of Plaintiff's cause of action that occurred in Michigan. As such, Plaintiff's breach of contract claim did not accrue without the state of Michigan and the Court declines to apply Michigan's borrowing statute to the instant case.

## B. MICHIGAN CHOICE-OF-LAW RULES

In a diversity case, a federal district court "is obligated to apply the choice of law rules of the state in which it sits." *Security Ins. Co. v. Kevin Tucker & Assoc.*, 64 F.3d 1001, 1005 (6th Cir. 1995); *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir. 1990), *cert den.*, 498 U.S. 941 (1990). Thus, the Court must look to the Michigan choice-of-law rules. For contractual disputes, as is present in this case, Michigan applies § 188 of the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 702 (Mich. 1995); *see also Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999).

According to § 188, to determine which state's laws control when a choice-of-law provision is absent from the contract, the district court analyzes: (1) where the contract was formed; (2) where negotiation of the contract occurred; (3) where performance of the contract is expected; and (4) the domicile and place of business of the parties with respect to the particular claims before the Court. Restatement (Second) of Conflict of Laws § 188(2).

Reviewing the pleadings and submitted affidavits in a light favorable to Plaintiff, the Court finds Michigan law controls this dispute. While Defendant asserts that, if any discussions regarding the oral contract occurred, the discussion occurred in California, it appears that these discussions only reiterated the terms of the alleged oral contract. It, however, does not appear that these

13

discussion were negotiations between the parties as the alleged oral promise to pay Plaintiff 50%

of Defendant's proceeds had already occurred in July of 2003 in Michigan. According to the record,

the alleged oral contract contains no terms as to where performance of the contract is expected.

Once Defendant's shares in ESI were redeemed, he allegedly promised to pay Plaintiff 50% of the

proceeds. Thus, performance of the alleged oral contract could occur in any geographic location.

The domicile and place of business of the parties is outside of Michigan; Plaintiff is a resident of

Alabama and Defendant is a resident of Nevada. The most significant fact, however, is that the

alleged oral promise was purportedly formed in Michigan in 2003. The Court therefore finds, after

considering all of the principles in § 188(2), that Michigan has the most significant relationship to

the alleged oral contract and parties. *See* Restatement (Second) of Conflict of Laws § 188(1) ("The

rights and duties of the parties with respect to an issue in contract are determined by the local law

of the state which . . . has the most significant relationship to the transaction and the parties.").

Accordingly, the Court will apply Michigan law to Plaintiff's claim.

## C.  COUNT I (BREACH OF EXPRESS CONTRACT)

For Plaintiff to state a breach of contract claim under Michigan law, the alleged oral contract must

meet the essential elements of a contract. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). A

contract requires the following essential elements: (1) parties competent to contract, (2) proper

subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.

*Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005). Consideration requires a

bargained-for exchange. *Higgins v. Monroe Evening News*, 272 N.W.2d 537, 543–44 (1978). This

bargained-for exchange involves "a benefit on one side, or a detriment suffered, or service done on

the other." *Gen. Motors Corp. v. Dep't of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002) (quoting

14

*Plastray Corp. v. Cole*, 37 N.W.2d 162, 165 (Mich. 1949)).

Defendant argues that Count I should be dismissed for failure to state a claim upon which relief may be granted because Defendant's alleged promise to pay Plaintiff 50% of Defendant's proceeds of the redemption of his shares is not supported by legal consideration. Specifically, Defendant asserts that Plaintiff's allegations that introducing Defendant to business contacts and approving Defendant's 30% equity interest in ESI in 1998 are not valid consideration. Plaintiff disagrees, asserting that the events that took place in 1998 are valid consideration to support Defendant's promise to pay in 2003.

Reviewing Plaintiff's Complaint, Plaintiff alleges in paragraph 22 that

> The contract is supported by valid consideration based on (A) [Plaintiff]'s introduction of [Defendant] to [Plaintiff]'s business contacts in order to assist [Defendant's] failing business and (B) approving [Defendant's] 30% interest of ESI even though [Defendant] paid nothing and performed no services for ESI but yet received a 30% interest in ESI.

Viewing the facts in favor of Plaintiff, the Court finds that an express oral contract was not formed in July of 2003 in Michigan based on Plaintiff's alleged legal consideration. Plaintiff's assertions that introducing Defendant to business contacts and approving Defendant's 30% interest in ESI in 1998 are valid consideration for an alleged oral promise in July of 2003 are not supported by Michigan law. Plaintiff fails to demonstrate how these acts in 1998 constitute a bargained-for exchanged that resulted in Defendant promising to pay Plaintiff in 2003. *See Shirey v. Camden*, 22 N.W. 2d 98, 102 (Mich. 1946) (noting that a past consideration is not sufficient legal consideration for a later agreement).

Rather, it appears to the Court from Plaintiff's own allegations in paragraph 12 and 13 of his Complaint that Defendant merely believed that Plaintiff's termination in the company he had

founded was unjust.  According to paragraph 13, Defendant promised Plaintiff that when Defendant redeemed his shares in ESI, Defendant "would make up ESI's mistreatment of [Plaintiff] and provide [Plaintiff] 50% of the amount [Defendant] received."  These allegations fail to show that Plaintiff and Defendant had a bargained-for exchange and that Defendant's promise is supported by consideration.  It appears that Defendant merely made a gratuitous promise to pay Plaintiff 50% of his proceeds.  Such a promise, however, does not create a valid contract under Michigan law.  *See Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991) ("It is a fundamental principle of contract law that a promise to pay is not binding if made without consideration.") (citing *Matson v. State Farm Mut. Auto. Ins. Co.*, 238 N.W.2d 380, 383 (Mich. Ct. App. 1975)).  Accordingly, the Court grants Defendant's Motion to Dismiss Count I of Plaintiff's Complaint.

## D.  COUNT II (BREACH OF IMPLIED CONTRACT)

A contract implied in fact arises "where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Auburn v. Brown*, 230 N.W. 2d 385, 389 (Mich. Ct. App. 1975) (citations omitted).  The elements necessary to form an implied contract are identical to the elements of an express contract.  *See Lowery v. Dep't of Corrections*, 380 N.W. 2d 99, 107–08 (Mich. Ct. App. 1985) (noting that an implied contract must still satisfy the elements of mutual assent and consideration).  Therefore, an implied contract requires: (1) parties competent to contract, (2) proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Hess*, 696 N.W.2d at 748.

Reviewing Plaintiff's Complaint, Plaintiff alleges in paragraphs 26 and 27 the following:

26.  [Plaintiff] and [Defendant] entered into an implied contract pursuant to which [Defendant] promised [Plaintiff] that he would take care of [Plaintiff] in the future and return the favor after [Plaintiff] had introduced him to [Plaintiff]'s business contacts when [Defendant's] business was failing and then promising to pay [Plaintiff] 50% of the redemption proceeds [Defendant] would and did receive from ESI.

27.  The implied contract is supported by the fact that [Plaintiff] brought his customers to ESI in exchange for 30% interest of ESI while [Defendant] paid nothing and performed no services for ESI but yet received a 30% interest in ESI.

Plaintiff's claim for breach of an implied contract fails for the same reason his claim for breach of an express contract fails. Similar to an express contract, an implied contract also requires legal consideration. For the reasons discussion in Part VI.C, *supra*, Plaintiff's acts of introducing Defendant to business contacts and approving Defendant's 30% interest in ESI in 1998 are not sufficient legal consideration to support an implied contract in 2003. Accordingly, the Court grants Defendant's Motion to Dismiss Count II of Plaintiff's Complaint.

## E.  COUNT III (UNJUST ENRICHMENT)

When an express or implied contract in fact does not exist, the Court may imply a contract in law so that an individual is not unjustly enriched at the expense of another. *See City Nat'l Bank v. Westland Towers Apartments*, 309 N.W.2d 209, 218 (Mich. Ct. App. 1981). Having determined that Plaintiff fails to state a claim for breach of an express or implied contract in fact, the Court turns to Plaintiff's claim for unjust enrichment. Under Michigan law, the elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Dumas v. Auto Club Insur. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991); *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993).

17

Defendant argues that Plaintiff's unjust enrichment claim must be dismissed as Defendant's promise to pay Plaintiff was a gratuitous promise, for which there is no legal obligation to make restitution.  As stated in Plaintiff's Complaint, Plaintiff asserts that he benefitted Defendant by introducing him to business contacts and approving Defendant's award of a 30% interest in ESI. In exchange for these benefits conferred on Defendant, Defendant allegedly paid no compensation or provided no services to ESI.  As a result of these benefits, Defendant received proceeds from the redemption of his interest in ESI.

Reviewing the Complaint and taking the facts in a light favorable to Plaintiff, Plaintiff has sufficiently pleaded a claim for unjust enrichment sufficient to satisfy Fed. R. Civ. P. 12(b)(6). According to the Complaint, Defendant received a benefit from Plaintiff in 1998 when Plaintiff introduced Defendant to business contacts and approved a 30% interest in ESI for Defendant. Defendant ultimately received $2,625,000 from the redemption of his interest in ESI without providing any compensation to Plaintiff.  Based on these allegations, the Court finds that it is plausible that an inequity may have resulted to Plaintiff because Defendant retained such benefits without compensating Plaintiff.  As such, the Court denies Defendant's Motion to Dismiss as to Count III of Plaintiff's Complaint.

## VII. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2), alternatively, to transfer venue [dkt 5] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Counts I and II are dismissed for failure to state

18

a claim under Fed. R. Civ. P. 12(b)(6).  This Court retains jurisdiction over Plaintiff's Count III.

      IT IS SO ORDERED.

                          s/Lawrence P. Zatkoff                
                          LAWRENCE P. ZATKOFF
                          UNITED STATES DISTRICT JUDGE

Dated:  November 30, 2011

CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 30, 2011.

                          s/Marie E. Verlinde                
                          Case Manager
                          (810) 984-3290

19